IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| 3909 REALTY LLC and GUY SHITRIT, | CIVIL ACTION |
| *Plaintiffs,* | |
| v. | No. 21-0030 |
| CITY OF PHILADELPHIA, | |
| *Defendants.* | |

**MEMORANDUM**

**KENNEY, J.**                                                                                                               June 8, 2021

This is a Section 1983 civil rights action brought by the Plaintiffs, a Limited Liability Company and its principal, regarding the demolition of a building located at 5714 Malcolm Street, Philadelphia, Pennsylvania, by the City of Philadelphia. Before the Court is the Defendant's Motion to Dismiss for Failure to State a Claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

I. **FACTUAL BACKGROUND**[1]

Plaintiff 3909 Realty ("3909 Realty") is a Limited Liability Company incorporated in the Commonwealth of Pennsylvania. ECF No. 8 ¶ 1. Plaintiff Guy Shitrit ("Shitrit") is the managing member of 3909 Realty. *Id*. ¶ 2. On May 9, 2019, the property at issue, 5714

---

[1] The Court "accept[s] as true all allegations in plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and [ ] construe[s] them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). The Court draws the following facts from the Amended Complaint and the attached exhibits. *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complaint's claims are based upon these documents.").

1

Malcolm St. (the "Property"), was sold to 3909 Realty at a Sheriff Sale. *Id.* ¶ 7, Ex. A. The Sheriff of Philadelphia executed a deed in Plaintiff 3909 Realty's favor on June 27, 2019, which was recorded in the Recorder of Deeds Office in Philadelphia on July 16, 2019. *Id.* On January 10, 2020, Plaintiff Shitrit, through Guy Advisor Group LLC ("Guy Advisor Group"), purchased 3909 Realty, including its interest in the Property (the "Agreement"). *Id.* ¶ 8, Ex. B. Guy Advisor Group is a Pennsylvania Limited Liability Company. *Id.* ¶ 3.

On March 6, 2020, the City issued a demolition permit for the Property on the basis that the Property was "Imminently Dangerous." *Id.* ¶ 11, Ex. D. The Philadelphia Department of Licenses and Inspections ("L&I Dept.") notified the Property's prior owner from before the Sheriff Sale, Ms. Clark-Thomas, of the demolition. *Id.* ¶¶ 12–13, Ex. E. Plaintiffs claim they did not receive notice of the demolition permit. *Id.* ¶ 21. The demolition permit became final on April 24, 2020. *Id.* ¶ 19.

On March 25, 2020, Plaintiffs applied for a permit to allow a complete structural restoration of the building. *Id.* ¶ 10, Ex. C. The following day, Plaintiffs received a telephone call from the City informing Plaintiffs that a detailed plan was required before the City would approve the permit. *Id.* ¶17. Plaintiffs claim that they were "hamstrung" in their ability to get plans assembled due to the COVID-19 crisis, were unaware of the City's pending demolition order, and, "based on their own professional assessment of the condition of the building, were not concerned about any <u>imminent</u> danger to the public." *Id.* ¶¶ 15–21 (emphasis in original). On May 21, 2020, Plaintiffs obtained an engineer to draft up restoration plans. *Id.* ¶ 23. The report was finished on or before July 18, 2020. *Id.* ¶ 29, Ex. G.

Meanwhile, on or about June 18, 2020, the L&I Dept. sent a notice of violation to Plaintiff Shitrit indicating that the Property had been inspected and it had been determined that

the entire structure was "Imminently Dangerous" ("Notice of Violation"). *Id*. ¶ 24, Ex. H. While the Notice of Violation indicates that the inspection was performed on June 16, 2020, Plaintiffs claim this must be false because the Notice of Violation states that the roof was still in disrepair when it was replaced on February 9, 2020. *Id.* ¶¶ 9 and 25, Ex. H. Regardless of the date of inspection, the Notice of Violation identified multiple violations with the premises, including "partially collapsed main roof, side/rear exterior walls, rear foundation, [and] front porch." *Id*. at Ex. H. The Notice of Violation stated that failure to correct the violations by June 26, 2020 "will result in [t]he removal of all occupants and demolition of your property." *Id*. It further indicated that Plaintiffs had the right to file an appeal by June 23, 2020 and provided contact information for the City. *Id*. Plaintiffs received the Notice of Violation on or around June 23, 2020. *Id*. ¶ 26. This was the formal deadline to appeal, and three days before the City indicated it would contemplate taking further action with respect to the Property. *Id.* ¶ 27, Ex. H. Plaintiffs claim this was the first time they were made aware that the City had designated the Property as "Imminently Dangerous" and was seeking its demolition. *Id.* ¶ 28.

The Property was demolished by the City sometime in late July or early August 2020. *Id.* ¶ 30. Plaintiffs do not allege that they attempted to appeal the violation per the instructions provided in the Notice of Violation, or that they took any actions whatsoever to contact the L&I Dept. upon receipt of the Notice of Violation on June 23, 2020. Plaintiffs accuse the L&I Dept. of generally being mismanaged and failing to properly inspect properties prior to demolition. *Id.* ¶¶ 31–35.

## II.    PROCEDURAL HISTORY

On November 23, 2020, Plaintiffs sued the City of Philadelphia Department of Licenses and Inspections to "recoup funds for the illegal demolition." ECF No. 1 at 11. Defendant

3

removed to this Court pursuant to 28 U.S.C. § 1441 because the Plaintiffs' complaint contained allegations of violations of Plaintiffs' federal civil rights.  *Id.* at 5.  Defendant then moved to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  ECF No. 4.  On February 26, 2021, Plaintiffs filed an Amended Complaint, bringing four counts under 42 U.S.C. § 1983 for violations of the Fifth Amendment Takings Clause (Count I), the Fifth Amendment Procedural Due Process requirements for failure to provide adequate notice (Count II), the Fifth Amendment Procedural Due Process requirements for failure to amend violation deadlines as a result of the COVID pandemic (Count III), and a *Monell* municipal liability claim for violations of the Fifth and Fourteenth Amendments (Count IV).  ECF No. 8.  Plaintiffs seek a declaratory judgment, compensatory damages, and attorney's fees and costs.  *Id.*  Defendant filed the pending motion to dismiss for failure to state a claim on March 31, 2021, which is now ripe for resolution.  ECF No. 10.

### III. JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction over this matter because the Plaintiffs' claims arise under 42 U.S.C. §1983.

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010)) (internal quotation marks omitted). A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts the factual allegations contained in the complaint as true but disregards rote

4

recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements. *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012). This Court will grant a motion to dismiss if the factual allegations do not "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove the facts alleged or will ultimately prevail on the merits. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 790–91 (3d Cir. 2016).

The Third Circuit directs the Court to apply a three-step analysis under a 12(b)(6) motion. First, the Court takes note of the elements the plaintiff must plead to state a claim. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (citing *Iqbal*, 556 U.S. at 675). Next, the Court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. *Id*. Finally, the Court assumes the veracity of well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement for relief. *Id*. In ruling on a motion to dismiss, the Court considers only "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013).

IV.    **RELEVANT LAW**

Plaintiffs sued under 42 U.S.C. § 1983 for violations of their federal constitutional rights for the City's demolition of the Property. Section 1983 provides that a person who "under color of state law" deprives a person of "any rights, privileges, or immunities secured by the Constitution and laws" shall be liable to the injured party in an action at law or suit in equity. 42 U.S.C. § 1983. To prevail on Section 1983 claim, Plaintiffs must show, first, that they were

deprived of a constitutional right and, second, that alleged deprivation was committed by person acting under color of state law. *Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606 (3d Cir. 2011). As the Plaintiffs have sued a department of the City of Philadelphia, Plaintiffs must also prove that the City is liable, because a municipality cannot always be held vicariously liable for the unconstitutional acts of its employees. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 135 (3d Cir. 2010) (citing *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 692 (1978)). There must be evidence that the city itself supported a violation of constitutional rights. *Simpson v. Ferry*, 202 F. Supp. 3d 444, 452 (E.D. Pa. 2016). Under *Monell*, for municipal liability to attach, the injury must be inflicted by the "execution of a government's policy or custom." 436 U.S. at 694.

### A. Municipal Liability

Municipalities and other local government units are "persons" that can be sued directly for monetary, declaratory, or injunctive relief for deprivations of federal civil rights under Section 1983. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). However, cities cannot be held liable under a *respondeat superior* or other vicarious liability doctrine. *Id.* at 690–95 ("a municipality cannot be held liable *solely* because it employs a tortfeasor") (emphasis in original). A local governing body can only be sued under Section 1983 if it "'causes' an employee to violate another's constitutional rights." *Id.* at 692 (citing 17 Stat. 13). For municipal liability to attach, the allegedly unconstitutional actions must implement or execute "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or be caused "pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id.* at 690–91. A city can also be liable for failures to act that

6

amount to deliberate indifference to the risk of violation of citizens' constitutional rights by non-policymakers. *Wright v. City of Philadelphia*, 685 F. App'x 142, 145 (3d Cir. 2017) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989)). These limitations avoid municipal liability under Section 1983 for "random unintentional and unauthorized conduct." *See* Steven E. Comer, "Municipal Liability Under Section 1983: The Rationale Underlying the Final Authority Doctrine," VANDERBILT LAW REV., vol. 44:341 (1991).

A policy need not be passed by a legislative body, or even be in writing, to constitute an official policy for the purposes of Section 1983; a pertinent decision by an official with decision-making authority on the subject constitutes official policy. *Porter v. City of Philadelphia*, 975 F.3d 374, 383 (3d Cir. 2020). "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990). A municipality can also be liable under Section 1983 if the Plaintiff can show that the city was deliberately indifferent to a likelihood of constitutional violations. *Robinson v. Fair Acres Geriatric Ctr.*, 722 F. App'x 194, 199 (3d Cir. 2018); *see also Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 409 (1997) (when the necessity for a policymaker to act "… is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need") (citing *Canton v. Harris*, 489 U.S. 378, 409 (1989)). A plaintiff sufficiently pleads deliberate indifference by a municipality by showing that (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an

employee will frequently cause deprivation of constitutional rights. *Doe v. Luzerne County*, 660 F.3d 169, 180 (3d Cir. 2011).

In their Amended Complaint, Plaintiffs claim that the Defendant City of Philadelphia should be liable under *Monell* because it has "tolerated, encouraged, and been deliberately indifferent to … patterns, practices, and customs" that result in "failure to inspect properties according to code; failure to pursue remediation short of demolition; failure to identify the actual owners of a building; [and] failure of inspectors to follow established policies, procedures, directives, and instructions regarding violations and the 'Imminently Dangerous' designation as presented in this case." ECF No. 8 ¶ 59–65. Plaintiffs claim these failures caused Plaintiffs to be deprived of their constitutional rights and privileges under the Fifth and Fourteenth Amendments to the U.S. Constitution. *Id.* ¶ 64. Plaintiffs claim damages for the loss of the fair market value of the Property and the loss of the expected profits from the renovation and sale of the Property. *Id.* Plaintiffs cite four newspaper articles concerning issues with the L&I Dept. to support their claims that the improper demolition of the Property was not an isolated incident but the result of a policy, practice, or custom of the City. *Id.* ¶ 32–35.

In its Motion to Dismiss, Defendant argues that the Plaintiffs failed to plead facts to support *Monell* claim based on either a municipal policy, practice or a custom. ECF No. 10 at 5–6. Defendant claims that Plaintiffs' pleadings are "merely … a recitation of the elements" that fail to meet the "'rigorous standards of culpability and causation required to state a claim for municipal liability.'" ECF No. 10 at 6. (citing *Wood v. Williams*, 568 F. App'x 100, 104 (3d Cir. 2014) (citations and quotations omitted)). Defendants also claim that Plaintiffs cannot cite their own experience—even if it amounted to a constitutional violation—as proof of a broad policy, custom, or failure to train without evidence that the violations reflect broader issues within the

L&I Dept. *Id.* at 7 (citing *Aponte v. City of Philadelphia*, No. CV 20-3373, 2021 WL 816931, at *4 (E.D. Pa. Mar. 3, 2021) ("a policy cannot ordinarily be inferred from a single instance of illegality")). Further, per Defendant, none of the Plaintiffs' allegations amount to a constitutional violation, so cannot support Plaintiffs' theory that the City has a policy, custom or practice that causes constitutional violations. *Id.*

Satisfying *Monell* is a threshold issue for establishing municipal liability for the deprivation of federal civil rights. *Buoniconti v. City of Philadelphia*, 148 F. Supp. 3d 425, 439 (E.D. Pa. 2015) (declining to assess plaintiff's Eighth Amendment claim since plaintiff failed to sufficiently plead a *Monell* claim against the city defendant). As the Court finds that Plaintiffs have not plausibly alleged any underlying constitutional violation, it is not necessary to decide the *Monell* liability issue. *Knellinger v. York St. Prop. Dev.*, LP, 57 F. Supp. 3d 462, 471 (E.D. Pa. 2014) ("without an underlying constitutional violation, there can be no *Monell* claim"). However, the Court notes that *Monell* liability is generally not amenable to resolution at the pleading stage, as it requires a plaintiff to plead facts outside his or her personal knowledge. Resolution of the ultimate merits of a *Monell* claim usually requires examination of matters beyond the pleadings, a task which cannot be undertaken in the context of a motion to dismiss. *Brunelle v. City of Scranton,* No. 3:15-CV-960, 2018 WL 3725731, at *9 (M.D. Pa. July 17, 2018), *report and recommendation adopted*, No. 3:15-CV-960, 2018 WL 3715718 (M.D. Pa. Aug. 3, 2018). If the Plaintiffs had sufficiently pled the underlying constitutional violations here, it is possible the City could be liable. Importantly, the City is on notice that failures to properly manage its property inspections and demolitions could result in constitutional violations, as the Takings Clause and other Due Process rights are implicated whenever a public authority uses its

property, contract, or regulatory powers to control rights or property which it has not purchased. *Hawkins v. Coleman Hall, C.C.F.*, 453 Fed. Appx. 208, 211 (3d Cir. 2011).

### B. Takings Clause Claim (Count I)

Plaintiffs claim that, in demolishing the Property without paying just compensation, and subsequently liening the Property to bill Plaintiffs for the demolition, the City violated the Takings Clause of the Fifth Amendment. ECF No. 8 ¶¶ 36–42. Plaintiffs assert that the structural issues identified in the Notice of Violation did not actually render the Property "Imminently Dangerous" and the demolition was not warranted. *Id.* ¶¶ 21, 25, 38. Plaintiffs claim losses of the fair market value of the Property and expected profits for renovation and sale of the Property. *Id.* ¶ 42.

The Takings Clause of the Fifth Amendment provides that private property shall not "be taken for public use, without just compensation." U.S. CONST. amend. V. This prohibition applies to state and local governments under the Fourteenth Amendment. *Cowell v. Palmer Twp.*, 263 F.3d 286, 290 (3d Cir. 2001). There is no requirement that a claimant exhaust state remedies before bringing a Takings Clause claim to federal court. *Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162, 2167 (2019). However, property is not "taken" where a city or other appropriate public authority has acted pursuant to its right and obligation to ensure public safety in remediating a dangerous condition. *See In re 106 N. Walnut, LLC*, 447 F. App'x 305, 309 (3d Cir. 2011) ("A municipality may, in the exercise of its police power, without compensation destroy a building or structure that is a menace to the public safety or welfare, or require the owner to demolish the dangerous piece of property.").

Here, the City was acting pursuant to its police power to regulate for the public welfare when it demolished the Property. *Win & Son, Inc. v. City of Philadelphia*, 162 F. Supp. 3d 449,

10

459 (E.D. Pa. 2016) ("the City had the right to condemn Plaintiffs' property"). Plaintiffs claim that the Property was not actually "Imminently Dangerous" because they had repaired the roof and because the scope of work planned would have remediated any concern that the building was dangerous. ECF No. 8 ¶¶ 14, 22. However, the Violation Notice cited multiple reasons for the Property's "Imminently Dangerous" designation, not just the condition of the roof. *See* ECF No. 8-8. The City's policies for handling demolition of "Imminently Dangerous" properties have been found to be constitutional. *See Winn & Sons, Inc. v. City of Phila.*, 162 F. Supp. 3d 449, 462 (E.D. Pa. 2016); *Johnson v. City of Philadelphia*, No. CV 19-1591-KSM, 2020 WL 2933853, at *9 (E.D. Pa. June 3, 2020).

Further, a Takings Clause claim cannot lie where the plaintiff was not deprived of all beneficial uses of his property. *Munoz v. City of Union City*, 481 F. App'x 754, 759 (3d Cir. 2012) (finding no taking occurred where plaintiff retained a possessory interest in the property); *see also Fisher v. Pratt*, No. CV 19-273 (NLH/KMW), 2020 WL 773262, at *7 (D.N.J. Feb. 18, 2020) (finding that no taking occurred when plaintiff's home was demolished after a fire caused a partial collapse where plaintiff had "not alleged a total deprivation of property"). Here, Plaintiffs have not alleged that they have lost all beneficial use of the Property or lost their possessory interest in the Property. Plaintiffs claim losses only for the demolition of the Property and expected profits from renovation and sale of the Property. *Id.* ¶ 42. As it appears from the pleadings that the Plaintiffs have retained possession of the Property and the ability to "put the property to any number of beneficial uses" (*Munoz*, 481 F. App'x at 759), the City's demolition of the Property cannot constitute a taking.

The Court finds that Plaintiffs have not pled a Takings Clause claim because the City demolished the Property pursuant to its power to abate a public hazard and because Plaintiffs have retained possession and beneficial use of the Property.

**C. Procedural Due Process Claims (Counts II and III)**

Plaintiffs have asserted two claims for Procedural Due Process violations: first, that Plaintiffs did not receive adequate notice prior to the demolition of the Property (Count II) and, second, that the City continued to require certain papers be delivered in-person and insisted on "holding to pre-COVID deadlines and time requirements during the pandemic" (Count III). ECF No. 8 ¶¶ 53, 56.

To state a Section 1983 Procedural Due Process claim, "a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law." *Hill v. Borough of Kutztown*, 455 F.3d 225, 233–34 (3d Cir. 2006). Plaintiffs must allege "that state actors deprived him of property to which he had a legitimate claim of entitlement without the process he deserved." *Gale v. Storti*, 608 F. Supp. 2d 629, 634 (E.D. Pa. 2009). There is no dispute that an ownership interest in real property merits the procedural protections of due process of law. *El Malik v. City of Philadelphia*, No. CIV A 06-1708, 2007 WL 984455, at *8 (E.D. Pa. Mar. 26, 2007). However, Due Process "does not require that a property owner receive actual notice before the government may take his property." *Jones v. Flowers*, 547 U.S. 220, 225 (2006). Where the government destroys a property in the interest of public safety, a pre demolition hearing is also not required. *Munoz v. City of Union City*, 481 F. App'x 754, 758 (3d Cir. 2012).

Plaintiffs complain that they did not receive notice of the first failed inspection and that the Notice of Violation received on or around June 23, 2020 did not provide the Plaintiffs adequate opportunity to contest the demolition order. ECF No. 8 ¶¶ 44, 48, 53–56. However, while three days is a brief window to appeal, the Property was not actually demolished until late July or early August of 2020 (ECF No. 8 ¶ 30), and there is no mention in the Amended Complaint of any actions taken by the Plaintiffs to contest the demolition. Plaintiffs did not allege an attempt on their part to file any kind appeal with the City or even any attempt to contact the City to request an extension in obtaining the engineering report or making the necessary repairs. Plaintiffs fail to allege *any* efforts to communicate the City concerning the Notice of Violation at any point between the receipt of the Notice of Violation on June 23, 2020 and the demolition of the Property. The Court finds that Plaintiffs have not stated a claim for a Procedural Due Process where they received actual notice of the impending demolition of the Property and failed to make any attempt to appeal or communicate at all with the City prior to the demolition. As pled, Plaintiffs' inaction after receiving actual notice of the City's intent to demolish the Property shows a lack of urgency on the Plaintiffs' part to preserve the property, which is incongruous with the claims they bring here. This inaction is especially noteworthy because the Plaintiffs are astute buyers who purchased the Property at a Sheriff Sale, and are undoubtedly familiar with the City's appeals process, including the possibility of filing an appeal *nunc pro tunc*.

## V.    CONCLUSION

Because Plaintiffs' Amended Complaint does not state a claim, the Court will grant Defendant's Motion to Dismiss. An appropriate Order will follow.

13

**BY THE COURT:**

/s/ Chad F. Kenney

**CHAD F. KENNEY, JUDGE**